UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| VERNITA ROBINSON, | ) | |
| | ) | |
| | ) | Civil Action No. 5:09-242-JMH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| DIXIE CONSUMER PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

** ** ** ** ** ** ** ** **

This matter is before the Court on the defendant's Motion for Motion for Summary Judgment [Record No. 42]. The *pro se* plaintiff filed a Response [Record No. 46] stating her objections to the Defendant's Motion for Summary Judgment. Defendant has filed a Reply [Record No. 56] in further support of its Motion. Accordingly, this matter is now ripe for decision.

Plaintiff Vernita Robinson ("Robinson") alleges that Defendant Dixie Consumer Products, LLC ("Dixie"), took adverse employment actions against her, including but not limited to termination, on the basis that she is African-American and that Dixie retaliated against her for reporting alleged discriminatory conduct. Dixie argues that it is entitled to summary judgment as a matter of law on Robinson's discrimination claim because Plaintiff cannot establish a prima facie case of discrimination nor can she

1

demonstrate that the basis upon which she was fired was pretext for discrimination. With respect to Plaintiff's claim for retaliation, Dixie argues that the parties responsible for her termination were unaware of her alleged complaint of discrimination, that Robinson cannot demonstrate that there is a causal link between her complaint of discrimination and her termination, and that she cannot demonstrate that the alleged non-discriminatory basis for her termination was a pretext for retaliation.

For the reasons which follow, Dixie's Motion for Summary Judgment will be granted.

## I. Background

Dixie operates a manufacturing facility in Lexington, Kentucky, which produces plastic and paper cups for consumer use. Robinson's job duties as an auto packer at this facility included operating packaging machines, entering production information into the computer, operating a machine to bag cups and loading bagged cups into boxes. At all relevant times, Robinson was a member of the Local Union No. 651 of the International Brotherhood of Teamsters (the "Union").

Dixie maintains a comprehensive Code of Conduct for its facility. The Code of Conduct demonstrates Dixie's goal "to provide a work environment where everyone is treated with dignity, respect, honest, and sensitivity," and Dixie requires its employees to treat one another in a way that is consistent with those

expectations. [Keally Decl. ¶4, Keally Decl. Ex. 1.] As part of that commitment, Dixie's Code of Conduct expressly indicates that "[b]ullying, violence, threats, intimidation, and other disruptive behavior in the workplace will not be tolerated." [Keally Decl. ¶4, Keally Decl. Ex. 1.] The Code of Conduct further delineates a nondiscrimination policy and anti-harassment policy, which sets forth a no-tolerance approach to offending conduct and provides that transgressions will prompt discipline up to and including termination. [Keally Decl. ¶4, Keally Decl. Ex. 1.] Dixie also prohibits retaliation and sets forth numerous avenues employees may take to report concerns – including reporting to an immediate supervisor, to the manager of the facility, to the local Human Resources leader, to the Corporate Human Resources Department, to the Law Department, to the Compliance and Ethics Department, or through the GuideLine system. [Keally Decl. ¶4, Keally Decl. Ex. 1.] The GuideLine system is a toll-free Company hotline in which a complaint or concern may be reported, anonymously if desired, after which it is forwarded to the appropriate individual for investigation and determination. [Keally Decl. ¶5.] The GuideLine system is maintained and tracked by a third-party provider who takes the calls, records information, and passes the information along to Dixie. [Druskat Decl. ¶3.]

Robinson signed an acknowledgment of Dixie's Code of Conduct and agreed to comply with Dixie's policies at the beginning of her

employment. [Pl. Dep. at 55-58; Code of Conduct Agreement.]

Robinson worked with an auto packing team for five ounce cups, which consisted of Toya Taylor, Joyce Strings, Wanda Mayberry, and Willie Meads during the relevant time period. This auto packing area is often referred to as "the wall" by those who work in the Dixie facility, due to the fact that the machinery used is along the west wall of the plant.

On or about September 14, 2007, Lynn Orme, a co-worker who worked on a separate shift than Robinson, reported to Guy Keally, Dixie's Human Resource Manager, that Robinson had appeared at Orme's home unannounced and made threatening remarks to Orme's son. Orme's son reported that a "woman knock[ed] on the door and said that [if] u keep fucking with her over her work coming early and stuff that she'll have her people . . . come to our house this weekend." [Keally Decl. ¶10.] Although Plaintiff denies using profanity during the exchange, Robinson admitted that went to Orme's home, when she knew Orme would be at work, to give a "friendly message" to Orme's son [Pl. Aff. ¶2.] In her deposition, Robinson explains:

> I wanted just to tell her son -- to tell her not to
> harass me at work because I had already talked to the
> supervisor, supervisor talked to her, but she was still
> harassing. And so I -- she was my neighbor, she's come
> to my house, we've stood in the street and talked and –
> and, you know, so I was going to just give her a message.
> It was a nice, friendly message. It was nice and
> friendly.

[Pl. Dep. at 71.] Keally investigated Orme's report, and

determined that Robinson violated the Code of Conduct. Although
Dixie could have terminated Robinson based on this incident alone,
a fact that Plaintiff acknowledges [Pl. Dep. at 69], Dixie instead
suspended Plaintiff for five (5) days and issued a "Last Chance"
Agreement. [Keally Decl. ¶ 10, Keally Decl. Ex. 2.]

The Last Chance Agreement, signed by Plaintiff and a
representative of the Union on September 24, 2007, stated in
relevant part that:

> It is understood between the parties that as a result of
> Vernita Robinson taking a work place disagreement to the
> home of Lynn Orme on the morning of 09/14/067 [sic], she
> violated our Code of Conduct.
>
> At no time will management condone employees taking work
> related issues to the home of another employee. There are
> numerous appropriate avenues for employees to pursue to
> resolve work place issues and the Company expects
> employees to follow them.
>
> The Employee, Teamsters Local 651, and the Company agree
> to the following:
> . . . . .
> 2. That any further such action of this nature can and
> will result in your immediate termination, without
> recourse.

[Last Chance Agreement; Pl. Dep. at 69.] Robinson understood that
any further action of a similar nature would result in her
termination. [Pl. Dep at 70.]

On or about January 17, 2008, Toya Taylor, who worked in the
same auto-packing team as Plaintiff, lodged a complaint with
GuideLine describing harassing and threatening conduct by Plaintiff
and others over the course of two (2) years. [Keally Decl. ¶ 11,

Keally Decl. Ex. 3; GuideLine Report, dated 1/17/2008.] Keally, as well as a member of Dixie's Corporate Security team who traveled to Lexington for in-person interviews, investigated the allegations in Taylor's complaint. Dixie determined that the employees "on the wall" were not treating each other with the respect required by the Code of Conduct and issued an oral warning to these employees that a refusal to conduct themselves appropriately could result in discipline or termination. [Keally Decl. ¶12, Pl. Dep at 78-9.] When the issues continued, a more formal written memorandum was issued on March 3, 2008 to the workers on the wall, including Robinson, Mayberry, Strings and Taylor, which stated that this "type of behavior is unacceptable and must change immediately. If you do not correct your behavior your employment will be terminated." [March 3, 2008 Memorandum.]

Several weeks later, on March 25, 2008, Plaintiff and Taylor were involved in an altercation in the women's restroom. Robinson alleges that Taylor followed her into the restroom and initiated a physical attack on Robinson. [Pl. Aff. ¶¶ 7, 9.] Robinson asserts that Taylor physically shoved and struck Robinson causing injury, verbally threatened her, and blocked Robinson's exit from the bathroom. [*Id.*] Robinson reported the incident a few days later to her supervisor, and identified witnesses to the incident. [Pl. Dep. at 89.] Keally began his investigation by interviewing the witnesses identified by Robinson. Taylor asserted that Robinson

initiated the argument. [Pl. Dep. at 99; Keally Decl. ¶15; Keally Decl. Ex. 6.] While the other witnesses reported that there was a verbal argument between Taylor and Robinson, none of the witnesses substantiated Robinson's assertions of physical contact or threatening behavior by Taylor. In fact, the witnesses reported that only Robinson used foul language during the altercation. [Keally Decl. ¶ 15, Keally Decl. Ex. 6.] Initially, Keally felt that he did not have enough information to substantiate either account, so he did not recommend discipline against either employee.

Robinson alleges that she told Jeff Carr, head of security, via email that Keally was not properly investigating the incident and that Keally treated African-American employees differently regarding discipline. She claims that she cited the Orme incident as evidence that Orme, an Asian-American employee, was favored. [Pl. Aff. ¶ 12.] The April 21, 2008, email from Robinson to Jeff Carr, which details Robinson's account of the incident, as well as Robinson's disappointment with Keally's investigation, however, fails to mention any specific allegations of *racial* discrimination or harassment by Keally or any of Dixie's employees or assert any facts that could possibly be read to infer racial discrimination or harassment.[1]   [April 21, 2008 Email & Letter.] Plaintiff's

---

[1]   Robinson's email does state that "I feel that I have been subjected to discriminatory harassment by Guy Keally because of a similar incident with different results" and "I'm reporting this in

7

response brief further states that during her telephone conference with Jeff Carr she reported that she felt that Keally failed to fully investigate her claims because that she, the victim of the alleged assault, was African-American and Keally treated African-Americans differently with respect to discipline.[2] [Pl. Decl. at ¶ 12.] Plaintiff's Response to the instant motion indicates that she was upset that during the investigation of the Taylor incident, in which Robinson, an African-American employee, was allegedly attacked by Taylor, another African-American employee, Robinson and Taylor were not separated. However, in the Orme incident, in which the alleged victim was not African-American, but Filipino, she and Orme were separated and the investigation was conducted quickly. Based on Robinson's affidavit herein, it is unclear whether Robinson asserts that this specific allegation of discrimination was reported to Carr. Carr denies any such report, and Robinson's account of the conversation is not clear. [Pl. Aff. ¶ 12, 14.] However, it is undisputed that Carr did not relay any allegation of racial discrimination to John Druskat, Guy Keally or Jeff Damico. [Carr Decl. ¶ 4.]

---

good faith and I feel that I will be further retaliated against by doing so," but the email fails to mention any racial animus by Keally or any other Dixie employee. A plain reading of her letter indicates that Plaintiff fears retaliation for criticizing Keally's job performance, rather than for reporting racial discrimination.

[2]    Carr denies that Robinson reported any allegations of racial discrimination or harassment during their telephone conference. [Carr Decl. ¶ 3.]

Robinson further states in her affidavit that she reported Keally's discriminatory behavior in a GuideLine phone call made on or about Saturday, April 26, 2008. [Pl. Decl. at ¶ 12.] Robinson also called GuideLine on April 4, 2008. The GuideLine reports are, however, devoid of any allegation of a racial animus on behalf of Keally or any other Dixie employee in the narrative section of the reports. While "retaliation" was checked as an "EEO/AA Classification" in the April 26, 2008 GuideLine Report, "race" was not. [4/26/08 GuideLine Report.] Thus, the GuideLine representative did not interpret Robinson's call as reporting racial discrimination or harassment. Rather the representative understood that Robinson was alleging "retaliation for complaining about workplace violence." [4/26/08 GuideLine Report.] In any event, it is undisputed that the GuideLine Report was not relayed to Keally or Jeff Damico, who terminated Plaintiff, until after Robinson's termination.

In April, 2008, John Druskat, then-Human Resources Manager for manufacturing and the North American Consumer Products Division, inquired about the status of the investigation. [Keally Decl. ¶ 16.] Carr had forwarded Robinson's letter outlining her concerns to Druskat. Druskat told Keally of Robinson's concerns about the investigations, and Druskat and Keally decided that Keally would go through a second round of interviews. Keally was not told of any allegations of discrimination or harassment due to race, which is

undisputed. [*Id.*] Although there is some dispute as to when Keally learned that Lois Hafley had witnessed the incident, it is undisputed that she was not interviewed until Keally's second round of interviews. [Keally Decl. ¶ 17.] Hafley was interviewed twice.[3] The second time, Hafley asked the union steward present during the interviews to leave and provided a more candid account of the incident to Keally. [Keally Decl. ¶18; Keally Decl. Ex. 7; Hafley Decl. ¶3; see also Pl. Dep. at 48.] Hafley, the only witness to the entire altercation, stated that she had been in the bathroom stall during the duration of the argument between Taylor and Robinson because she was afraid to exit the stall. At some point, Hafley stated to the Plaintiff that she "was scared to death. That's why [she] hid in the bathroom." [Pl. Dep. at 48.] Hafley stated that both Robinson and Taylor were involved in a loud, heated argument during which they both made threatening remarks. [Keally Decl. at ¶19.] Based on Hafley's account, Dixie determined that both Taylor and Robinson had violated the code of conduct. Plant Director Jeff Damico terminated Taylor, who had not been issued a Last Chance Agreement, and Robinson on Monday, April 28,

---

[3] Hafley states that "I did not provide Mr. Keally with much detail concerning the incident because I feared for my safety if either woman learned that I had decribed [sic] their angry argument to management..." during the first interview. [Hafley Decl. at ¶ 4.]

2008.[4]

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), as in effect at the time the motion for summary judgment was filed, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."[5] The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party "cannot rest on its pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). The non-movant "must set forth specific facts showing that there is a genuine issue," such that a jury could reasonably decide in his favor at trial. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 792 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

---

[4] Following Robinson's termination, she sent correspondence to Chris Schwebs, Manager of EEO Compliance, alleging racial discrimination. Robinson admits that the document sent to Schwebs was not sent until after her termination. [Pl. Dep. at 132-3.]

[5] A revised version of Federal Rule of Civil Procedure 56 became effective on December 1, 2010. The cross motions for summary judgment in this case was filed prior to December 1, 2010, and are governed by the version of Rule 56 that was in effect at the time the motion was filed. *See Wheeler v. Newell*, No. 09-4549, 2011 WL 204457, *3 n.3 (6th Cir. Jan. 24, 2011).

(1986)).  "When a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of the plaintiff's claim, as in the present case, Rule 56 requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact." *Bailey v. Floyd County Bd. of Edu.*, 106 F.3d 135, 145 (6th Cir. 1997).  Without such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  In considering a motion for summary judgment, the court must construe the facts in the light most favorable to the nonmoving party, but it "need not accept as true legal conclusions or unwarranted factual inferences." *Anderson*, 477 U.S. at 255; *Morgan v. Church's Fried Chicken*, 829 F.3d 10, 12 (6th Cir. 1987).

## III. DISCUSSION

Plaintiff alleges that Dixie discriminated against her on the basis of race and retaliated against her for reporting the alleged discrimination against her in violation of the Kentucky Civil Rights Act, KRS Chapter 344.  The Court uses federal standards for evaluating race discrimination claims brought under the Kentucky Civil Rights Act, KRS Chapter 344, because it mirrors Title VII of the Civil Rights Act of 1964.  *Smith v. Leggett Wire Co.,* 220 F.3d 752, 758 (6th Cir. 2000).

## A. Racial Discrimination

Plaintiff argues that Dixie discriminated against her on account of race because Keally investigated her complaint of workplace violence by Taylor differently than he investigated other complaints by non-African American employees, and that she received disparate treatment with respect to discipline.

Title VII makes it an unlawful for an employer "to ... discharge ... or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment ... because of such individual's race [or] color...." 42 U.S.C. § 2000e-2(a)(1). As in this case, when a plaintiff only presents circumstantial evidence that her discharge was motivated by race, a Title VII discrimination claim must be examined under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Robinson bears the burden to first demonstrate "a prima facie case of discrimination by showing that: (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was replaced by a person outside of the protected class" or treated differently than similarly situated employees. *Russell v. Univ. of Toledo,* 537 F.3d 596, 605 (6th Cir. 2008)(internal citations and quotations omitted). To demonstrate that she was qualified for the position, Robinson must demonstrate that she was

performing her job at a level that met her employer's legitimate expectations at the time of her discharge. *Vincent v. Brewer Co.,* 514 F.3d 489, 495 (6th Cir. 2007).

If the plaintiff can demonstrate a *prima facie* case of discrimination, then she has created a rebuttable presumption of discrimination, and the burden "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action." *Id.* (citing *Newman v. Fed. Express Corp.,* 266 F.3d 401, 406 (6th Cir. 2001)). "To establish such pretext, a plaintiff must show either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not actually motivate her discharge, or (3) that they were *insufficient* to motivate discharge." *Id*. (emphasis in original)(citing *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)).

**i. Allegation of discrimination based on Keally's investigation**

Plaintiff alleges that Keally separated non-African American victims from their attackers during his investigations, but did not separate African American employees who were the victims of workplace violence or threats. She cites to the situation in which Orme, a Filipino employee, was the victim of Robinson's threats, as an example. She also argues that Keally investigated Orme's complaint more quickly than Robinson's allegation of workplace violence.

First, the facts surrounding the Orme incident and Robinson's alleged attack are distinctly different. The Orme incident involved a limited number of witnesses and fairly straightforward allegations. There were also allegations that Robinson had made a discrete threat to Orme through Orme's son at Orme's home. Robinson's incident with Taylor, however, involved multiple witnesses with conflicting accounts of the incident which lasted some lengthy period of time at the workplace. Additionally, the alleged threats made by Taylor and Robinson were more general in nature. Thus, Plaintiff cannot show that Orme and she were similarly situated.

More importantly, Plaintiff cannot show that the alleged discrepancies in Keally's investigation constitute an adverse employment action. An adverse employment action materially changes the terms and conditions of a plaintiff's employment. "Adverse employment actions are typically marked by a significant change in employment status, including hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). The alleged disparities regarding investigations of workplace violence by Keally would not qualify as an adverse employment action. Robinson complains because Taylor and Robinson continued to work in the same area each day during the investigation. By contrast, Robinson

states that she was suspended from work during the investigation into the Orme incident. However, these disparities, in and of themselves, are insufficient to constitute an adverse employment action.

Dixie did investigate Robinson's claims of workplace violence, as she requested. While the investigation resulted in Robinson's termination, a result she disagreed with, Robinson admits that Dixie interviewed all of the witnesses that she identified and ultimately concluded the investigation. Thus, Plaintiff cannot show that Dixie discriminated against her on the basis of her race with respect to the investigation.[6]

## ii. Allegation of discrimination based on termination

Dixie does not dispute that Robinson, who is African-American, is a member of a protected class. Likewise, Dixie does not contest that Plaintiff was terminated, which qualifies as an adverse employment action.[7] Dixie argues that Robinson cannot meet the

---

[6] Plaintiff does not allege any facts that would establish a hostile work environment claim in her complaint, or in her response to the motion for summary judgment. See *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 706 (6th Cir. 2007).

[7] To the extent that Plaintiff argues that as an African-American employee she was disciplined more harshly than non-African-American employees prior to her termination, Plaintiff fails to develop her argument or point to any similarly situated non-African-American employee engaged in a similar pattern of misconduct who was punished less severely. In the disciplinary context, Plaintiff must show that the plaintiff and the proposed comparator have engaged in acts of "comparable seriousness." *Clayton v. Meijer,* 281 F.3d 605, 611 (6th Cir. 2002).

fourth requirement because she fails to demonstrate that a similarly situated employee was treated more favorably. However, Plaintiff has shown that Dixie hired a Caucasian employee to replace her. Thus, Plaintiff has met her burden with respect to the last portion of the inquiry. *Russell,* 537 F.3d at 604.

On the other hand, Dixie argues that Robinson failed to meet Dixie's legitimate performance expectations when Dixie terminated her employment and, therefore, she cannot establish a prima facie case of discrimination. Even construing Plaintiff's filings liberally, as this Court is required to do, *see Spotts v. U.S.*, 429 F.3d 248, 250 (6th Cir. 2005), Plaintiff fails to demonstrate that she was meeting her employer's legitimate performance expectations, the final requirement for a *prima facie* case of discrimination. The Code of Conduct clearly sets out Dixie's expectations for its employees' behavior, and Robinson was repeatedly warned that her behavior violated the Code of Conduct.

Although Robinson denies the characterization of her visit to Orme's home on September 14, 2007, she admitted that Dixie's conclusion regarding the incident could have resulted in her termination from Dixie. Instead of terminating her employment, Dixie instead issued a Last Chance Agreement. Robinson acknowledged that Dixie provided her with notice that any further similar actions would result in her immediate termination. A few months later, in January 2008, Robinson was issued an oral warning,

along with other employees on the wall, which escalated to a written warning when the problems persisted. The written warning, issued in March, 2008, again reiterated that Plaintiff would be terminated if her behavior continued.

Despite two prior warnings, Robinson engaged in a loud argument, lasting approximately 40 minutes, with Taylor in the women's restroom several weeks later. Robinson does not dispute that the argument occurred. Following an investigation, which Robinson pursued, the only witness to the entire incident gave a statement which directly contradicted Robinson's version of the events. Ultimately, it was determined that both Taylor and Robinson had violated the Code of Conduct. Both Taylor and Robinson were terminated. Unlike Robinson, however, Taylor had not been issued a Last Chance Agreement.

Over the course of several months Robinson repeatedly failed to comply with the explicit expectations outlined in Dixie's Code of Conduct, despite several warnings. Plaintiff fails to show that she was meeting Dixie's legitimate expectations at the time of her termination. Thus, Plaintiff has failed to demonstrate a *prima facie* case of discrimination and Dixie is entitled to summary judgment on Robinson's racial discrimination claim.

Nonetheless, even if Plaintiff had met her initial burden, she has not shown that Dixie's legitimate non-discriminatory basis for firing Plaintiff was pretext for unlawful discrimination, and thus

her racial discrimination claim fails on those grounds as well. Based on the facts presented to this Court, Dixie's articulated legitimate nondiscriminatory reason for terminating Robinson, her continued breaches of the Code of Conduct, is grounded in fact, did motivate her discharge, and was sufficient to result in her termination. If an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretext by showing the employer was ultimately incorrect. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008). "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 414 (6th Cir. 2008) (quoting *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998)). "The employee then has the opportunity to introduce contrary evidence, but the decisional process need not be optimal, only reasonably informed and considered." *Russell*, 537 F.3d at 605. While Plaintiff contests the factual bases underlying the disciplinary actions taken against her, it is clear that Dixie's investigation into each complaint was complete and that Dixie made a reasonable decision based on the facts as known at the time. Plaintiff had been given two warnings requiring her to comply with the Code of Conduct before she was ultimately terminated.

Moreover, it is undisputed that Damico made the decision to

terminate Plaintiff, yet Plaintiff makes no allegations that Damico discriminated against African-American employees, or Robinson in particular.  In fact, the only allegations of racial discrimination made by Plaintiff at any time are levied against Keally, who did not make the decision to terminate Plaintiff.  Outside of general statements of opinion, Plaintiff has failed to present *any* evidence that Keally, or any employee at Dixie, was motivated to take any action against Robinson on the basis of her race.  Thus, Robinson's Kentucky Civil Rights Act Claim fails.

**B. Retaliation**

To establish a prima facie case of retaliation, Robinson must show that (1) she engaged in activity protected by the Kentucky Civil Rights Act, (2) this exercise of her protected rights was known, (3) Dixie thereafter took adverse employment action against her, and (4) there was a causal connection between the protected activity and the adverse employment action.  *Russell,* 537 F.3d at 609 (citing *Morris v. Oldham Co. Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000)).  "Protected activity" includes opposing any employer practice that is unlawful under Title VII or participating in a Title VII investigation.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000).  The burden on the plaintiff to show a prima facie case in this context is not an onerous one.  *Id.* Once the plaintiff has shown a prima facie case, the burden of production then shifts to the employer who must articulate a

legitimate, nondiscriminatory reason for its actions. *Russell,* 537 F.3d at 609. "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate the proffered reason was not the true reason for the employment decision." *Id.*

As noted above, Plaintiff's allegations that she reported racial discrimination during the GuideLine calls that she made on April 4, 2008, and April 26, 2008, is not corroborated by the GuideLine reports produced. Likewise, the email and letter to Carr lack any mention of racial discrimination. The documents produced are wholly void of any reference to any report of any facts that would put Dixie on notice that Plaintiff was complaining of racial discrimination. Nonetheless, Plaintiff insists that she reported racial discrimination during her telephone conference with Carr on April 21, 2008. Viewing Plaintiff's filings in a light most favorable to her, the Court will assume that a report of racial discrimination was made to Carr during that telephone call prior to her termination on April 28, 2008. Accordingly, Plaintiff has shown that she participated in a protected activity.

Yet, even with this determination, Plaintiff cannot set forth a prima facie case of retaliation. It is undisputed that Keally and Damico, the relevant decision maker, were not aware of any allegation of racial discrimination at the time of Plaintiff's termination. Because Plaintiff has not shown that the relevant decision-maker was aware of her alleged complaints of racial

discrimination, she cannot meet the second prong of the inquiry required to show a *prima facie* case of retaliation. See *Mulhall v. Ashcroft*, 287 F.3d 543, 554 (6th Cir. 2002); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999). Because Plaintiff cannot meet the second necessary factor, the Court need not address the remaining parts of the inquiry. Plaintiff's Kentucky Civil Rights Act claim for retaliation must fail.

**IV. Conclusion**

For the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's claims of racial discrimination and retaliation in violation of the Kentucky Civil Rights Act.

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment [Record No. 42] is **GRANTED.**

This the 13th day of April, 2011.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge